**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **YOGESH MEHTA, ET AL.,** | * | |
| *Plaintiffs,* | * | |
| v. | * | **Civil Case No: 1:23-cv-02698-JMC** |
| **MUTUAL BENEFIT INSURANCE COMPANY,** | * | |
| *Defendant.* | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Yogesh and Chetna Mehta, filed the present lawsuit on August 8, 2023, against Defendant, Mutual Benefit Insurance Company, in the Circuit Court for Baltimore County, Maryland, seeking declaratory judgment and alleging breach of contract. (ECF No. 2). Defendant then removed the case to this Court on October 5, 2023. (ECF Nos. 1, 7). Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 30). The motion is fully briefed (ECF Nos. 31, 32) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Defendant's motion will be denied.

## I. BACKGROUND

At all times relevant to this lawsuit, Plaintiffs owned a residence in Maryland insured by Defendant through its homeowner's policy HO00266198 (the "Policy"). (ECF No. 30-1 at 1; ECF No. 31-1 at 1; ECF No. 30-3 at 4).[1] Plaintiffs traveled to India from roughly September 7, 2022, to January 18, 2023. (ECF No. 31-6 at 4–5). Plaintiff Mr. Mehta's sister, Manisha Bhatt, checked in on Plaintiffs' residence "whenever she had time" while Plaintiffs were out of the country. *Id.* at 5–6. Two days prior to Plaintiffs' trip, Plaintiffs supposedly set the thermostat "on 70 for air condition and 60 on heating" through an internet application that allowed them to pre-set their thermostat for the dates that they were out of the home. *Id.* at 6, 9. "But when [they] left, internet was disconnected. So [they] could not do it on the phone" while away if needed. *Id.* at 9.

According to Ms. Bhatt's deposition testimony, Ms. Bhatt discovered flooding at Plaintiffs' residence on roughly January 2, 2023, when she "tried to open the door" for one of her random wellness checks. (ECF No. 31-7 at 5). The flooding prevented Ms. Bhatt from entering through the front door "And then – because of that ceilings and all that had come down." *Id.* at 6. Ms. Bhatt immediately telephoned Plaintiffs' son, Anand Mehta, to inform Anand of the situation while the water continued to flood through Plaintiffs' home. *Id.*[2] Ms. Bhatt and Anand proceeded to call the fire department, which cut off the water to Plaintiffs' residence to stop the flooding. *Id.* Upon briefly inspecting the residence after the water was shut off, Ms. Bhatt noticed that at least part of the ceiling "was down" and that there was "plenty damage" to Plaintiffs' furniture. *Id.* at 7–8. Anand subsequently informed Plaintiffs of the flooding on January 2, 2023, before becoming heavily involved in cleaning Plaintiffs' residence prior to their return home. (ECF No. 31-6 at 5;

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[2] The Court refers to Anand Mehta as "Anand" throughout this Memorandum Opinion and Order solely as to avoid any confusion with reference to Plaintiff Mr. Yogesh Mehta.

ECF No. 31-7 at 6–7, 9). Plaintiff Mr. Mehta declared as of February 22, 2023, that the house was "Not liveable" because all but one bedroom, the living room, dining room, family room, and the full basement were damaged by the flooding, necessitating that Plaintiffs temporarily relocate to an apartment in Towson, Maryland. (ECF No. 31-6 at 4, 9–10).

Plaintiffs' son contacted David Yates of Yates Consulting, "a plumbing/heating/air conditioning" business, to "take a look at the problem that his parents were having." (ECF No. 31-11 at 4). Mr. Yates visited the property on roughly March 4, 2023. *Id.* at 7–8. Mr. Yates described his initial inspection of the property as follows:

> The first thing that I look[ed] for was freeze damage in the piping and I found none whatsoever. And then the second place I looked was a kitchen sink which was on an outside wall and that's typically where we first see freeze damage in a home that's been subject to freezing, and there was no damage under there. The piping was – obviously had not been touched, tampered or repaired. It looked to be the original piping.

*Id.* Mr. Yates then observed that a faucet in the guest bathroom on the second floor "was obviously broken" because "the hot side stem had separated from the faucet." *Id.* He also noted that, regarding the shower faucet in Plaintiffs' master bedroom, "the stem for the isolation valve had pushed through the retainer clip and so there were two leaks. There was one there at the master bath/shower and one at the vanity." *Id.* Mr. Yates proceeded to inspect the basement vanity, where he did not observe any freeze damage. *Id.* He then "went on to test the water heater and the water pressure in the house to try and determine what may have occurred that could cause that kind of damage in the upper floor bathrooms." *Id.* With reference to local weather reports throughout December 2022 and his own inspection, Mr. Yates further opined that:

> [I]n this case we didn't have that solid set of bitter cold weather that would lead me to conclude that the house actually froze up. And the fact that those fixtures were on inside walls also indicated to me that the house did not freeze, that there was a – rather that there was a pressure issue . . . I think what happened is somewhere in that main [water] line an ice plug formed and that would have isolated – would have

> effectively isolated the hot side from the rest of the system . . . An ice plug, as it forms and freezes and works its way out and expands, can generate several thousand psi of pressure which is enough to split copper or push fittings apart. And I suspect that what happened in this case it [the ice plug] pushed the hot stem out of the master bath/shower and also the stem off of the lavatory faucet in the guest bedroom . . . And the other thing that's interesting is when this does happen, and I have seen it happen in quite a few homes, no leaks show up until the warmer weather arrives and that ice plug thaws. And as soon as the ice plug thaws, then you have water spewing forth from wherever the damage occurred.

*Id.* at 9, 11. Mr. Yates clarified that the ice plug likely formed when cold air entered Plaintiffs' residence during a cold night in December 2022. *Id.* at 10.

Plaintiffs subsequently initiated a claim with Defendant regarding the damage to their home. Although it is not entirely clear from the present motion when this occurred, Plaintiffs asserted in their written discovery responses that Anand telephoned Defendant on January 2, 2023, (the day that Ms. Bhatt discovered the damage) to start the "claim process on the home." (ECF No. 31-5 at 11). Defendant eventually disavowed coverage for Plaintiffs' claimed damages on June 7, 2023, on the ground that:

> You went on a vacation abroad beginning in September 2022. You had a family member, [Ms. Bhatt], checking in on the Property regularly. Energy utility records from Baltimore Gas & Electric ('BGE') show no use of gas whatsoever for the time period when you were abroad. Daily utility records from BGE indicate that use of gas in the residence resumed only shortly after the loss was discovered. The water damage at issue in this claim was caused by the failure of two separate bathroom fixtures on the second floor. The fixtures separated due to freezing. The damage done to the Property was consistent with the Property not having been heated.

(ECF No. 31-3 at 2). Plaintiffs then filed the present lawsuit in August 2023 before Defendant removed it to this Court in October 2023. (ECF Nos. 1, 2).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III. DISCUSSION

Defendant argues that it is entitled to summary judgment because Plaintiffs, as a matter of law, failed to take "reasonable steps" to "maintain heat" while they were out of the country, resulting in a non-covered peril under the Policy. (ECF No. 30-1 at 6–10). "Our primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself." *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000). "We look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." *Id.* (citing *Chantel Assoc. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131 (1995)). In pertinent part, the Policy here provides that:

> Coverage C - Personal Property
> We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions . . .
>
> 14. Freezing
> a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:
> (1) Maintain heat in the building; or
> (2) Shut off the water supply and drain all systems and appliances of water.
> However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.
> b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.
>
> * * *
>
> We do not insure, however, for loss:
>
> c. Caused by:
> (1) Freezing of a plumbing, heating, air condition or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:
> (a) Maintain heat in the building; or
> (b) Shut off the water supply and drain all systems and appliances of water.

(ECF No. 30-4 at 3–4).[3]

"When 'determining whether an action is covered within the scope of an insurance policy,' Maryland courts employ a 'three-part burden-shifting scheme[.]'" *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 512 (D. Md. 2019) (quoting *CX Reinsurance Co. Ltd. v. Camden Mgmt. Servs., LLC*, No. WMN-14-180, 2014 WL 5510914, at *3 (D. Md. Oct. 30, 2014)). "First, the burden of proving entitlement to insurance benefits lies with the insured. Second, the insurer must demonstrate that the policy excludes coverage of the claim. Third, if the insurance company prevails in showing that the claim is excluded, the insured must prove the applicability of an exception to the exclusion." *Id.* (internal quotations and citations omitted).

Defendant's sole argument in support of summary judgment in its favor is that Plaintiffs' damages resulting from freezing pipes is plainly not covered under the Policy unless Plaintiffs took reasonable care to maintain heat in their home, which Plaintiffs failed to do as a matter of law. More specifically, Defendant contends that Plaintiffs' uncorroborated, self-serving testimony regarding the steps they took to maintain heat in their home is insufficient to overcome documentary evidence from BGE that little to no natural gas was used in Plaintiffs' residence from December 14, 2022, through January 2, 2023, which is within the time frame that both parties agree the damages occurred. Plaintiffs "agree that there was a 'freeze' event of some type and that there was corresponding loss" and that Defendant "has denied coverage based on an exclusion to coverage." (ECF No. 31-1 at 5). However, Plaintiffs counter that summary judgment is improper

[3] It appears from the evidence submitted in connection with this motion that both parties attached only endorsements to the Policy, which modified the Policy, rather than the underlying Policy itself in support of their respective positions. *See* (ECF No. 30-3; ECF No. 31-2). Regardless, the above contractual language is derived from that included in Defendant's reservation of rights letter that was sent to Plaintiffs on January 20, 2023, (attached as exhibit 2 to Defendant's motion) and Plaintiffs do not contest that the above contractual language is inaccurate or otherwise indicate that the Policy does not contain the above provisions. Further, Plaintiffs assert in their opposition that such language is accurate. (ECF No. 31-1 at 4).

because "[1] The parties disagree on the precise nature and cause of the loss, [2] whether the heat was on, [3] whether the heat was working, [4] whether there was a widespread 'whole house' or an isolated limited freeze event occurring . . . and, [5] if the [Plaintiffs] complied with their policy by employing 'reasonable care' to maintain heat while they were away." *Id.* Plaintiffs even go as far as urging the Court to enter partial summary judgment in *their* favor because they exercised reasonable care as a matter of law.

Plaintiffs' reliance on the first and fourth assertions is misplaced. Plaintiffs' concession that their residence was damaged by a "freeze event" in their plumbing/water pipes implicates the above contractual provisions. Regardless of the source of the freeze event or the exact science behind that event, there is no genuine dispute that Plaintiffs' residence was damaged by the type of freezing contemplated by the Policy. The issue then becomes whether there exists a genuine dispute of material fact regarding whether Plaintiffs used reasonable care to maintain heat in their residence leading up to that event.

As a preliminary matter, Plaintiffs contend that "There appears to be a dearth of Maryland cases directly on point" for the proposition that "cases involving reasonable care/reasonable person standard are instructive in determining if summary judgment is appropriate here, and that the reasonableness of their actions should be left to a reasonable jury," yet Plaintiffs provide no citation to any such Maryland authority in this context specifically. (ECF No. 31-1 at 9, 9 n.5). Nevertheless, Plaintiffs do provide ample authority supporting the general proposition that "reasonableness" is often a question of fact to be determined by a jury. *See, e.g.*, *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) (observing that "Indeed, [the Supreme Court] has long recognized across a variety of doctrinal contexts that, when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker

that ought to provide the fact-intensive answer" and collecting cases); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976) ("In an analogous context, the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment in negligence cases."). This is bolstered by Maryland law indicating that issues of reasonableness and exercising due care are ordinarily jury issues in other contexts, such as claims of negligence and contributory negligence. *See, e.g.*, *Woolridge v. Abrishami*, 233 Md. App. 278, 302–03 (2017); *Polakoff v. Turner*, 385 Md. 467, 478–80 (2005).

The parties also express some conflicting views on who carries which burden(s) in this case. *See* (ECF No. 31-1 at 13–15; ECF No. 32 at 3–5). To be clear, the Policy provides coverage for damages from freezing *if* Plaintiffs exercised reasonable care in maintaining heat in their home. Under the above three-part framework, it is therefore Plaintiffs' burden to demonstrate that they did, in fact, exercise reasonable care to maintain heat, but that doing so nevertheless resulted in damages from freezing that are covered as physical losses under the Policy. The burden then shifts to Defendant to demonstrate that an exclusion to this principle applies, namely that Plaintiffs failed to exercise reasonable care in maintaining heat in their home.

Here, there exists a genuine dispute of material fact regarding whether Plaintiffs exercised reasonable care in maintaining heat in their home. Plaintiffs testified during their joint deposition that they attempted to take reasonable measures to keep their home heated while away by pre-setting the thermostat and seeking Ms. Bhatt's assistance in monitoring the home during their absence. Ms. Bhatt also asserted in her deposition that she never had to adjust the thermostat during her visits and that she never observed anything out of the ordinary at the home during her visits, which would presumably include noticing whether Plaintiffs' residence was particularly cold (or warm). (ECF No. 31-6 at 6; ECF No. 31-7 at 7). Ms. Bhatt further indicated to SEA,

Ltd., a forensic engineering service hired by Defendant to investigate Plaintiffs' claim, that "she thought that the inside of the house felt like it was heated during her visits." (ECF No. 31-13 at 11).

Defendant rebuts that this self-serving testimony is insufficient to survive summary judgment because BGE records indicate little to no natural gas was used in Plaintiffs' home while they were away, constituting "contradictory documentary evidence" overriding Plaintiffs' assertions. (ECF No. 30-1 at 7). "[C]ourts have 'long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (quoting *Berry v. Chi. Trans. Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). "Rather, if such an affidavit is based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts." *Id.* (quotation omitted); *see also Allegis Grp., Inc. v. Bero*, No. CV ELH-22-686, 2023 WL 5989438, at *20 (D. Md. Sept. 1, 2023) ("But, if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving.") (citing *Lovett*, 700 F. App'x at 212). As Defendant highlights, though, "testimony can and should be rejected without a trial if, in the circumstances, *no* reasonable person would believe it." *Church v. Maryland*, 180 F. Supp. 2d 708, 741 (D. Md. 2002), *aff'd*, 53 F. App'x 673 (4th Cir. 2002) (emphasis added) (quotation omitted); *see also id.* (citing *Respect, Inc. v. Committee on the Status of Women*, 781 F. Supp. 1358, 1367 (N.D. Ill. 1992), for the proposition that "even on summary judgment the district court should not credit testimony that is inherently incredible . . . a standard met where, as here, the nonmoving party's story is *irrefutably* contradicted by documentary evidence") (emphasis added).

The Court is unable to conclude at this time that *no* reasonable person would believe Plaintiffs' (and Ms. Bhatt's) firsthand testimony or that the BGE records *irrefutably* contradict as much. Defendant admits in its motion that "the [BGE] representative and BGE would not definitively say that there was absolutely zero [natural gas] usage whatsoever." (ECF No. 30-1 at 9); Def.'s Mot. For Summ. J., Ex. 8, Dep. of Jessica Gump, at p. 22. Additionally, Mr. Yates opined that it was plausible that either (1) the gas usage was zero because the thermostat did not need to activate given the "warm weather that we had in 2022 of December"; or (2) the gas usage may not have raised to a detectable level in the BGE reports if it ran for a period of time insufficiently long to generate a "therm." (ECF No. 31-11 at 13).[4] Mr. Yates also opined that he "would expect to see more damage" if the heat in Plaintiffs' residence was completely off leading up to the freezing and flooding. *Id.* It is also worth noting that neither party sets forth a definition under the Policy of what constitutes "reasonable care," leaving such language open to varying interpretations that the Court cannot surmise at this stage, particularly in light of the above conflicting record evidence. Accordingly, the Court cannot definitively state as a matter of law that Plaintiffs failed to take reasonable measures to maintain heat in their home, which led to the flooding and precludes Plaintiffs from seeking coverage under the Policy given the facts of this case. Summary judgment in favor of Defendant is therefore inappropriate on this issue. Likewise, nor can the Court conclude as a matter of law that Plaintiffs *did* exercise reasonable care in maintaining heat in their home while out of the country.

---

[4] *See Therm*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/therm (last visited June 26, 2024) (defining "therm" as "a unit for quantity of heat that equals 100,000 British thermal units").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 30) is **DENIED** and Plaintiffs' cross-request for summary judgment in their opposition (ECF No. 31) is **DENIED**. The parties shall prepare diligently for their upcoming settlement conference with Judge Aslan which is currently scheduled for August 13, 2024. (ECF No. 29). In the event that the parties are unable to resolve this matter during that mediation, the parties shall promptly inform the undersigned via a joint correspondence or status report indicating as such. The Court will then continue with trial scheduling if needed.

Date: June 27, 2024

/s/
J. Mark Coulson
United States Magistrate Judge